IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| *In re Subpoena Duces Tecum Issued to Verizon Wireless* | * * * * | Civil No. 1:25-mc-00575-TDC |

\* \* \*

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Kelly Arslanian's Motion to Quash, or in the Alternative for a Protective Order against Team Cam LLC's Subpoena *Duces Tecum* issued to Verizon Wireless for Arslanian's phone records. The parties fully briefed the issues and participated in a telephone conference with the undersigned on October 21, 2025. ECF 16. For the reasons stated below, the Court DENIES the Motion to Quash and GRANTS Motion for Protective Order.

I.  BACKGROUND

Team Cam, LLC ("Team Cam") filed suit against several companies including Reliable Contracting Company, Inc. ("Reliable"), alleging that the defendants violated antitrust laws by conspiring to drive Team Cam, their competitor, out of the road paving industry. ECF 2, at 1; *see also* Complaint, *Team Cam, LLC v. Reliable Contracting Co., Inc.*, No. 24-1545-TDC (D. Md.), ECF 1 ("Complaint"). Relevant to the Court's analysis, Team Cam alleges that the conspiracy began in 2022 and continued until about July 24, 2023, when Team Cam ceased to operate after assigning its business contracts to Reliable. *See* Complaint at ¶¶ 5, 113. The discovery dispute at issue concerns a subpoena issued by Team Cam to telecommunications provider Verizon Wireless, seeking "any and all" subscriber information as well as text messages and phone call logs for 15 numbers from

1

2019 to the present, excluding the content of any text messages. ECF 7, at 2. One of these numbers is the personal cell phone number of Petitioner Kelly Arslanian, Reliable's Chief Financial Officer. On July 9, 2025, Arslanian filed a Motion to Quash in the U.S. District Court for the District of the District of Columbia. *Id.* The federal court in D.C. transferred the matter to this Court. *Id.*, at 1. Arslanian challenges the subpoena on the grounds that (1) the records sought are for her personal cell phone which she "does not routinely use for business purposes;" and (2) the subpoena sweeps too broadly by seeking records for the 18-month period before her employment with Reliable. ECF 1, at 2. In the alternative to quashing, Arslanian seeks a protective order on the basis that the subpoena is overbroad and not proportional to the case. *Id.* On October 21, 2025, the parties to this dispute argued their positions in a telephone conference with the Court. ECF 16.

## II.    LEGAL STANDARD

"District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of VA., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). As a general matter, Federal Rule of Civil Procedure 26(b)(1) establishes the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" The conjunctive in Rule 26(b)(1) stresses the Court's two primary considerations. First, the low bar of "*relevance*, not *admissibility*" at trial, dictates whether information is discoverable. *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997) (emphasis in original); Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *see also Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) ("Relevance

2

is not, on its own, a high bar."). Second, even where a party clears the low bar of relevance, the Federal Rules limit discovery based on "[p]roportionality[,] [which] requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Verizon Wireless*, No. 19-1744-TDC, 2019 WL 4415538, at *4 (D. Md. Sept. 16, 2019) (quoting *Jordan*, 921 F.3d 180, 188–89); *see also Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming this information is relevant (in the broadest sense), the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had."). The proportionality analysis is "more demanding" when considering a subpoena to a non-party. *Jordan*, 921 F.3d at 189.

The party seeking a protective order bears the burden of establishing good cause for such an order based on "particular and specific demonstrations of fact" rather than "stereotyped or conclusory statements." *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 278 (D. Md. 2012) (internal quotation marks and citations omitted).

### III. ANALYSIS

For the reasons stated below, the Court denies the Motion to Quash but grants the Motion for Protective Order. The Court will shorten the time encompassed by the subpoena as to Ms. Arslanian's records.

#### A. The Court denies the Motion to Quash because Arslanian lacks standing to quash the subpoena.

As a threshold matter, the Court must determine whether Arslanian has standing to challenge the subpoena. *See, e.g., Goldstein, et al. v. Hindle*, No. 21-3124-CJC, 2025 WL 1928048, *3 (D. Md. July 14, 2025). "A party does not have standing to challenge a subpoena issued to a non-party 'unless the party claims some personal right or privilege

3

in the information sought by the subpoena.'" *Robertson v. Cartinhour*, No. 09-3436-AW, 2010 WL 716221, at *1 (D. Md. Feb. 23, 2010) (quoting *United States v. Idema*, 118 Fed. App'x 740, 744 (4th Cir. 2005)). Arslanian argues she has standing because she "has a personal interest in the call and text message communications as they are her personal communications." ECF 1 at ¶ 9. Some jurisdictions recognize that a telephone user's privacy interest in their phone records is to confer standing to bring a motion to quash. *See e.g.*, *Yanping Chen v. Federal Bureau of Investigation*, No. 20-mc-107-CRC, 2020 WL 7668880, at *4 (D.D.C. Dec. 24, 2020) (noting that party challenging subpoena has a privacy interest in their cell phone records); *Kizer v. Starr Indem. & Liab. Co.*, No. 18-cv-846, 2019 WL 2017556, at *3 (W.D. Okla. May 6, 2019) (partially quashing a subpoena based on challenging party's privacy interest in their cell phone records); *NuVasive, Inc., v. Absolute Medical, et al.*, No. 6:17-cv-2206-Orl-41GJK, 2019 WL 12517009, at *2 (M.D. Fla. Jan. 31, 2019) (joining other Florida federal courts in finding an individual's personal interest in their "telephone records sufficient to confer standing to challenge a subpoena directed to a third party") (citation omitted).

However, decisions within the Fourth Circuit find no such privacy interest in personal phone records reflecting call activity or invoices. *See Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, No. 09-1201-PWG, 2011 WL 3651821, at *2 (D. Md. Aug. 17, 2011) ("An individual does not have a legitimate expectation of privacy in the telephone numbers that are dialed on his or her telephone." (quoting *Booker v. Dominion Va. Power,* No. 3:09cv759, 2010 WL 1848474, at *9 (E.D. Va. May 7, 2010))). Thus, "[a]lthough an individual might harbor some subjective expectation that the phone numbers he dialed would remain private, the expectation is not a legitimate expectation because it is not one that society is prepared to recognize as reasonable." *Corsair*, 2011

WL 3651821, at *2 (internal quotations and citations omitted); *see also In re Verizon Wireless*, 2019 WL 4415538, at *5 (finding no standing to quash a subpoena for phone and text records).  The Court is unaware of any Fourth Circuit decision on the issue of standing to challenge a subpoena seeking call and text message records that exclude any content of those communications.[1]

Consistent with prior decisions of this Court and others in the Fourth Circuit, the undersigned finds that Arslanian lacks a privacy interest in the requested *non-content* records sufficient to provide standing to challenge the subpoena *duces tecum*.  The Motion to Quash is denied.

### B. The Court grants the Motion for Protective Order because the subpoena sweeps too broadly.

Arslanian may still challenge the subpoena for the purpose of obtaining a protective order.  *See Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012) (collecting cases noting that a party may challenge a subpoena under Rule 26 regardless of whether they have standing to bring a motion to quash); *In re Verizon Wireless*, 2019 WL 4415538, at *6 (citing *Singletary* in finding standing to seek a protective order despite lacking standing to quash the subpoena to Verizon).  The Court must limit the extent of discovery if it determines that the "proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).  If the "proposed

---

[1] The Court emphasizes that these conclusions apply to the sorts of phone records requested in this case that exclude the content of communications—that is, records showing call or message logs but not the contents of any such calls or messages.  In *Corsair*, Judge Grimm looked to a variety of decisions to support his conclusion, including Fourth Amendment jurisprudence examining expectations of privacy regarding incoming or outgoing call logs.  Therefore, nothing in this opinion should be construed as extending to any requests that would disclose the contents of a phone user's communications or other information potentially more sensitive or confidential than what Team Cam seeks here.

discovery outweighs its likely benefit," the subpoena does not satisfy the proportionality inquiry. Fed. R. Civ. P. 26(b)(1). As the Fourth Circuit explains,

> The information sought must likely (not just theoretically) have marginal benefit in litigating important issues. (We mean "marginal" in the economic sense that the information must offer some value over and above what the requesting party already has, not in the sense that a mere *de minimis* benefit will suffice.) Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.

*Jordan*, 921 F.3d at 189 (internal quotations and citations omitted). In addition to the usual considerations of monetary costs and time, invasion of privacy falls within the scope of "cognizable burdens" relevant to the Rule 26 analysis when considering a protective order. *Id.*

Arslanian argues that the subpoena is overbroad and not proportional to the case, and that any response should be prohibited or limited to a shorter timeframe.[2] Specifically, she emphasizes that the subpoena sweeps too broadly by seeking records for the 22-month period before she was the CFO, 18 of which pre-date her employment at Reliable. ECF 1, at ¶ 11. Arslanian also contends that she does not "routinely conduct business via her personal cell phone" and that the rare occurrence where she did use her personal cell phone is insufficient to "establish that the proposed discovery of every single

---

[2] During the telephone conference, Arslanian's (and Reliable's) counsel proposed that the Court order a third-party to undertake a first-level analysis of her phone records to see whether she has contact with others relevant to the accusations raised in the complaint, before providing such information to plaintiff's counsel. The Court finds this unnecessary and overly burdensome, considering Team Cam's representation that it is not already employing a comparable third-party review process and, instead, its attorneys handle the initial review of subpoena productions to date.

number she called, or that called her, or that she texted, or from which she received text messages, does not outweigh its benefit." *Id.*, at ¶ 17.

In response, Team Cam offered to narrow the period for Arslanian's records to her period of employment at Reliable.³ ECF 2, at 2. It also counters Arslanian's claim that she uses her phone only for personal purposes by noting that Arslanian regularly provides her personal cell phone number in business contexts (including to Team Cam in "correspondence related to the sale of Team Cam's assets"). *Id.*, at 2, 4. Team Cam also highlights that the call log of Reliable's Chief Operating Officer, Rob Scrivener, reflects several dozen calls and texts from Arslanian during a 22-month period after Reliable acquired Team Cam, thus establishing both the likelihood that she uses her personal phone for business purposes and the need for the requested telephone records.⁴ *Id.*, at 2.

Arslanian insists that Team Cam's arguments prove her overbreadth contentions by demonstrating that "Team Cam already possesses the log of Mr. Scrivener's telephonic communications and has subpoenaed records for more than fifty additional telephone numbers," none of which have been quashed. ECF 6, at 3-4. Therefore, "[a]ny telephonic communications that Ms. Arslanian had with any person remotely connected to this matter will be found in those other records," thus rendering "any *relevant* information to be gleaned from Ms. Arslanian's personal communications . . . duplicative." *Id.* During the hearing, Team Cam responded that Arslanian is a high-ranking member of Reliable who, they insist, provided her personal phone numbers to competitors whose numbers

---

³ Arslanian denied this modification because, she alleges, Team Cam would modify the subpoena only if Arslanian paid the costs. ECF 6, at 5.

⁴ Team Cam received Scrivener's call and text logs via the same subpoena Arslanian challenges. ECF 2, at 2.

may not have been subpoenaed. It also represented that the quality and duration of the received phone records is inconsistent due to, among other things, differences in certain providers' retention policies.

The Court agrees with Arslanian that the subpoena sweeps too broadly by including a time during which Arslanian was either not employed by or acting as Reliable's CFO. Team Cam does not indicate how, if at all, a non-executive-level Reliable employee would have played any material role in the alleged conspiracy and its formation. The Court also agrees with Arslanian's contention that calls with other Reliable officers do not necessarily suggest illegal activity or demonstrate that she used her phone often to discuss matters with other defendants' personnel. However, there is some—even if scant—indication she used her phone for work purposes. Thus, records from during the time as CFO clear the low bar of relevance to be discoverable.

The Court finds proportionality to be the closer call here. On one hand, if Arslanian called others whose records have been or will be produced in response to Team Cam's subpoenas, production of her records is unlikely to demonstrate anything those other records do not show. On the other, Team Cam contends that its subpoena permits exploration of whether Arslanian contacted and maintained communications with competitors whose records are not subject to the subpoena or otherwise incomplete or unavailable due to telephone providers' varying retention policies and practices.[5] In response to the Court's inquiry, Team Cam represented that it has not reviewed all of the received phone records, which are being produced on a rolling basis.

---

[5] Plaintiff's counsel suggested that some telephone providers' retention policies—but not Verizon's—impact the ability to obtain records more than two years old.

The Court will grant Team Cam some latitude to explore its contentions and suspicions. But it will not sweep so broadly before or after the alleged conspiracy period. The period before Arslanian served as Reliable's CFO does not appear relevant, even if some pre-conspiracy period may be relevant. Also, the period after Reliable acquired Team Cam—July 2023—does not appear proportional, even if relevant, within the context of Arslanian's records.[6] The production of phone records for other alleged conspirators and their agents is critical to the Court's conclusion. Team Cam is not entitled to obtain "every relevant document" where—within the context of its allegations and receipt of communication logs for dozens of others alleged to have facilitated a conspiracy—multiple years of Ms. Arslanian's phone records do not appear likely to contribute "some value over and above" what Team Cam already has in the phone records of more than 50 other individuals whose records Team Cam obtained. *Jordan*, 921 F.3d at 189. To the extent that records of certain alleged participants are incomplete or unavailable, Arslanian's records may not be duplicative.

For these reasons, Team Cam must narrow the time frame of the subpoena as to Arslanian. Taking all of the above into consideration, the Court finds an appropriate period to be six months: October 1, 2022 to April 30, 2023. This represents a substantial part of the alleged conspiracy period—Team Cam alleges the "coordinated campaign"

---

[6] Plaintiff's counsel argued for production of records covering the thirty days after it filed this lawsuit in 2024. The Court finds this period to be not proportional on this record. There is not strong evidence of ongoing communication between Arslanian and Reliable's alleged co-conspirators. Equally important, plaintiff's arguments invoking retention policies does not appear to impact records in 2024. Even if, as plaintiff's counsel asserts, some telephone providers lack complete records more than two years in the past, such retention policies would not limit the ability to obtain records from spring and summer of 2024.

against it began in January 2023—and falls within her time as CFO. If the call logs—either from her phone or others—substantiate Team Cam's suspicions that she used the phone number in question to contact alleged co-conspirators within the scope of the alleged conspiracy, a second, broader production *may* be justified. But given the availability of other records and the relatively thin showing that she often contacted alleged co-defendants using her personal phone, any broader duration is inappropriate at this time.

As a final matter, the Court addresses two issues incident to its directive. First, Arslanian's privacy assertions, while insufficient to confer standing to quash, can be addressed by the protective order in the underlying litigation. *See* Stipulated Protective Order, *Team Cam, LLC v. Reliable Contracting Co., Inc.*, No. 24-1545-TDC (D. Md.), ECF 110; *see also Addi v. Corvias Mgmt.-Army, LLC*, No. ELH-19-3253, 2020 WL 7707039, at *2 (D. Md. Dec. 28, 2020) (observing that protective orders address valid non-party privacy interests related to personal information in discoverable records). The Court encourages the parties to reach an agreement on how the phone records shall be treated within the scope of the governing protective order. Second, the parties to this Motion disputed who should bear the cost of a modified subpoena. Because the Court finds that the subpoena was overbroad as to Arslanian, Team Cam must modify the subpoena without shifting the costs to Arslanian.

## IV. CONCLUSION

For the reasons stated herein, Arslanian's Motion to Quash (ECF 1) is DENIED. However, her alternative motion for a protective order is GRANTED. Team Cam is hereby ordered to modify the subpoena, consistent with the findings herein and the accompanying order, and without charge to Petitioner. A separate order will issue.


Date: November 13, 2025                             /s/
                                        Charles D. Austin
                                        United States Magistrate Judge